[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12412

_____

D.C. Docket No. 3:70-cr-00176-HLA-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUY ENNIS SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 7, 2018)

Before MARCUS, NEWSOM, and EBEL,* Circuit Judges.

PER CURIAM:

---

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Petitioner Guy Smith invokes the writ of *coram nobis* in asking this Court to vacate his 1971 conviction for wearing military medals without authorization in violation of what is now 18 U.S.C. § 704(a).  In order to obtain *coram nobis* relief, Smith must show, among other things, that this conviction is causing him a present harm.  On remand from an earlier decision of this Court, the district court held an evidentiary hearing and found that removing the § 704(a) conviction from Smith's record would not affect his presumptive parole release date (PPRD), and that the conviction was therefore not causing him a present harm.  We find no clear error in this finding, and so we affirm.[1]

## I

In 1970, Guy Smith was arrested for reckless driving, operating a vehicle without a driver's license, speeding, and possession of marijuana.  During the arrest, the officer found a denim jacket with various military medals attached, including a Purple Heart and Vietnam service medal.  The government charged Smith with, *inter alia*, wearing a Purple Heart medal without authorization in

---

[1] We need not, and thus do not, reach the question whether Smith's § 704(a) conviction is unconstitutional in light of the Supreme Court's decision in *United States v. Alvarez*, 567 U.S. 709, 730 (2012) (holding 18 U.S.C. § 704(b) unconstitutional because it infringed upon speech protected by the First Amendment).  *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

violation of 18 U.S.C. § 704(a).[2]  Smith pleaded guilty and was sentenced to six months of probation.  With court permission, he satisfied the sentence by paying a $100 fine.

Smith was arrested several more times in the ensuing years, including for a traffic offense, gun possession, vehicle theft, and intimidation.  Separately, in 1978, Smith was convicted of first-degree murder for his participation in the beating and stabbing of a woman.

In *United States v. Alvarez*, 567 U.S. 709, 715 (2012), the Supreme Court invalidated 18 U.S.C. § 704(b), which prohibited an individual from falsely representing (either verbally or in writing) that he had been awarded any of a number of government-conferred medals or badges.[3]  Shortly thereafter, Smith sought relief under the common law writ of error *coram nobis* for his conviction under § 704(b)'s statutory neighbor, § 704(a).  Smith argued that this conviction

---

[2] At time of Smith's arrest, § 704 provided:  "Whoever knowingly wears, manufactures, or sells any decoration or medal authorized by Congress for the armed forces of the United States, or any of the service medals or badges awarded to the members of such forces, or the ribbon, button, or rosette of any such badge, decoration or medal, or any colorable imitation thereof; except when authorized under regulations made pursuant to law, shall be fined not more than $250 or imprisoned not more than six months, or both."  18 U.S.C. § 704 (1970).  In 1994, § 704 was amended and this language became § 704(a).  See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2113.

[3] At the time, § 704(b) provided:  "Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both."  18 U.S.C. § 704(b) (2006).

was causing him ongoing harm because Florida's Parole Commission had considered it in calculating his PPRD—and would continue to do so—thereby prolonging his entitlement to a hearing or presumptive release date.  In a succinct order, the district court concluded that "[f]or the reasons discussed in the Government's Response, the Court finds that [Smith] is not entitled to coram nobis relief."

We vacated that order on the ground that "[n]o evidentiary hearing was held and the district court did not enter any findings" about whether the challenged conviction was causing Smith a "'present harm' that is 'more than incidental.'" *United States v. Smith*, 644 F. App'x 927, 928 (11th Cir. 2016) (per curiam) (quoting *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007)).  On remand, the district court held an evidentiary hearing and received documentary evidence detailing how the Parole Commission calculated Smith's PPRD.  The district court also heard testimony from Laura Tully, who worked for the Parole Commission for more than a decade and whose responsibilities included calculating prisoners' PPRDs.  In preparation for her testimony, Tully reviewed the calculations used to determine Smith's PPRD.  Tully testified that even if Smith's § 704(a) conviction were vacated, his "salient factor score"—a PPRD input that is at the heart of this dispute—would remain the same.

4

Assuming for the sake of its analysis that Smith could prove that his § 704(a) conviction was unconstitutional, the district court found that Smith nonetheless had "not met his burden to demonstrate that removing the [§ 704] conviction from his record would change his [salient-factor] Score" and thus enhance his prospects for an earlier parole hearing or release date. Smith timely appealed and now argues that that the district court abused its discretion in denying him *coram nobis* relief.

## II

We review a district court's denial of a petition for a writ of error *coram nobis* for abuse of discretion. *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). Pursuant to our previous opinion, which noted that the district court had not "enter[ed] any findings about the issue," remanded for an evidentiary hearing, and instructed it to "find [whether] Smith ha[d] shown he [was] suffering current harm," *Smith*, 644 F. App'x at 928, we understand the district court's determination that Smith's conviction is not causing him a present harm to be a finding of fact. We review factual findings for clear error. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014).

## A

"The bar for coram nobis relief is high." *Alikhani*, 200 F.3d at 734. Because the "[r]outine grant of coram nobis relief . . . would undermine the finality of

5

criminal convictions," courts must exercise "special restraint." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). As the Supreme Court has put it, *coram nobis* relief is an "extraordinary remedy" that should be afforded "only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). With this high bar in mind, we turn to the calculation of Smith's PPRD. If Smith's PPRD would not change even if his conviction under § 704(a) were vacated, then he is not entitled to *coram nobis* relief.

A Florida prisoner's PPRD is the product of several inputs. First, and most relevant here, is the salient-factor score. This figure is calculated with reference to the prisoner's number of prior convictions. According to Smith's PPRD Commission Action form, the Parole Commission found that Smith had three or more prior convictions. Inserting this figure into the designated table yielded a salient-factor score of "2 points." The salient-factor score was then combined with a "Severity of Offense Behavior" assessment to give a "Matrix Time Range." Smith was convicted of a capital felony, meriting a severity score of 6. When cross referenced with his salient-factor score of 2, Smith's matrix time range was 180–240 months.

Based on the evidence and testimony before it, the district court found that even if it were to vacate Smith's § 704(a) conviction, he would still have three

prior convictions, earn the same salient-factor score of 2 points, and thus receive the same matrix time range and PPRD. Smith now argues that vacating the offense would drop him down to two prior convictions, a salient-factor score of "1 point," and thus, per the matrix, a range of 120–180 months.

Smith has been convicted twice for carrying a concealed weapon. The Parole Commission included these convictions in Smith's tally, and neither party contends that it was error to do so. Thus, if there is one more qualifying conviction in Smith's record—other than for unlawfully wearing military medals—then Smith will reach the three-prior-conviction threshold. Vacating his § 704(a) conviction would then not affect his PPRD, he would not be able to show that he suffered a present harm from the conviction, and his petition for *coram nobis* relief would fail.

**B**

After reviewing the transcripts, the administrative rules governing the Parole Commission's calculation, and the application of these rules to Smith's criminal record, we do not find that the district court's conclusion was clearly erroneous— that is, we do not have a "definite and firm conviction that a mistake has been committed." *Coggin v. Comm'r*, 71 F.3d 855, 860 (11th Cir. 1996) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The first arrest on Smith's Florida Criminal History report lists a traffic offense committed when Smith was 17. The offense level is a "misdemeanor," the disposition is "convicted," and the sentencing provision indicates that Smith received probation. Florida Administrative Code Rule 23-21.007 details how the Parole Commission tabulates a prisoner's salient-factor score. Section (1)(b) provides, "For purposes of scoring this item, do not count . . . *noncriminal traffic infractions* as prior criminal record." FLA. ADMIN. CODE r. 23-21.007(1)(b) (2017) (emphasis added). Misdemeanors are criminal offenses, so, reading "noncriminal traffic infractions" in the converse, Smith's first arrest appears to have been a criminal conviction that would count toward the calculation of Smith's salient-factor score.

Likewise the offense labelled "Arrest 9" on Smith's Criminal History report. What were initially charges for resisting an officer and a moving traffic violation were amended to a single charge of obstruction of justice. Smith pleaded *nolo contendere* to this charge and was assessed $102 in court fees. Smith argues that this arrest should not be counted—among other reasons—because of Rule 23-21.007(1)(g), which instructs, "Do not count offenses when adjudication is withheld, unless a sanction is imposed." *Id.* Smith asserts that $102 in court fees does not amount to a "sanction," and thus that this arrest should not be included in his criminal record.

Although this chapter of Florida's Administrative Code does not define "sanction," it does include a definition for "juvenile sanction." Rule 23-21.002(26) defines that term as "a court-imposed punishment on a minor for an act which, if committed by an adult, would have been criminal." FLA. ADMIN. CODE r. 23-21.002(26) (2018). "Sanction" may thus reasonably be understood to contemplate any "court-imposed punishment . . . for an act." Obstruction of justice is clearly "an act," and we do not find it clear error to conclude that the obligation to pay $102 is a court imposed punishment. Smith's "Arrest 9" thus provides additional support for the district court's determination.

Finally, insofar as Smith challenges the district court's decision to credit Laura Tully's testimony that his salient-factor score would be the same even without his § 704(a) conviction, we note that "[g]enerally, we refuse to disturb a credibility determination unless it is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Rivers v. United States*, 777 F.3d 1306, 1317 (11th Cir. 2015) (internal quotation marks omitted). We afford such deference "because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Tully was the only witness to testify with any expertise concerning these calculations, and the district court questioned her directly. Moreover, while it is true that Tully's

9

testimony indicated that the Commission may exercise greater discretion than a strict reading of Florida's Administrative Code would suggest, that claim has little bearing on her central conclusion that removing Smith's § 704(a) conviction would have no impact on his salient-factor score.  That conclusion falls well short of the inconsistency or improbability required for us to disturb the district court's determination.

### III

Our review of the record leaves us short of the requisite "definite and firm conviction that a mistake has been committed."  *Coggin*, 71 F.3d at 860.  Quite the opposite, it suggests that Smith likely has multiple prior criminal offenses that would support his salient-factor score and PPRD even if his § 704(a) conviction were vacated.  The district court did not clearly err in concluding that Smith's conviction is not causing him a present harm, and as such, that Smith is not entitled to *coram nobis* relief.

**AFFIRMED.**